# The Great-West Life Assurance Company

INSURED  RICHARD S INCANDELA

POLICY NUMBER  4183333

The Great-West Life Assurance Company (the Company) will pay the proceeds to the beneficiary, subject to the policy provisions, when it receives due proof of the Insured's death.

The Owner and the beneficiary are as shown in the application unless changed as provided for in this policy.

*R K Pinnan*
Senior Vice-President and Secretary

*K P Kavanagh*
President

COUNTERSIGNATURE

*For the Actuary*

Resident Licensed Agent

This policy is a legal contract between the Owner and The Great-West Life Assurance Company.  PLEASE READ IT CAREFULLY.

15 DAY RIGHT TO EXAMINE POLICY:  If not satisfied with the policy, return it to the Company or an authorized agent within 15 days of receiving it.  The policy will be void from the start and all premiums paid will be refunded.

ADJUSTABLE DEATH BENEFIT.  PROCEEDS PAYABLE AT DEATH SUBJECT TO POLICY PROVISIONS.  FLEXIBLE PREMIUMS PAYABLE WHILE INSURED IS ALIVE. NON-PARTICIPATING:  NOT ELIGIBLE FOR DIVIDENDS.

X223b

EXHIBIT A

POLICY SPECIFICATIONS

PLAN        FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE: NON-PARTICIPATING

OWNER       SHARON SUE INCANDELA

INSURED          RICHARD S INCANDELA

POLICY NUMBER    4183333

POLICY DATE      1 JUNE 1988

FACE AMOUNT      $1,750,000.00

ISSUE AGE/SEX  51 MALE          ISSUE DATE  12 SEPTEMBER 1988

PREMIUM CLASS FOR INSURED    NONSMOKER STANDARD

INITIAL PERIODIC PREMIUM AMOUNT    $1,200.00    EVERY MONTH

ADDITIONAL FIRST YEAR PLANNED PREMIUM  $80,000.00

PREMIUM SCHEDULE (AMOUNTS NET OF PARTIAL WITHDRAWALS TAKEN)

| END OF POLICY YEAR | CUMULATIVE AMOUNT |
|---|---|
| 1 | $25,777.50 |
| 2 | $51,555.00 |
| 3 | $77,332.50 |
| 4 | $103,110.00 |
| 5 | $128,887.50 |

IF NO PREMIUMS ARE PAID AFTER THE FIRST PREMIUM OR IF SUBSEQUENT PREMIUMS PROVE TO BE TOO LOW, THIS COVERAGE MAY CEASE PRIOR TO AGE 95. THE STATEMENT OF POLICY COST AND BENEFIT INFORMATION THAT ACCOMPANIES THIS POLICY SHOWS THE AGE COVERAGE WOULD CEASE BASED ON THE INITIAL PERIODIC PREMIUM AMOUNT AND THE GUARANTEED INTEREST RATE.

EXPENSE CHARGE        2% OF ALL PREMIUMS PAID

MONTHLY SERVICE CHARGE    $5.00

A SURRENDER CHARGE WILL BE DEDUCTED IF THE POLICY IS SURRENDERED IN THE FIRST 15 POLICY YEARS. THIS CHARGE IS EXPLAINED ON PAGES 12 AND 16 OF THE POLICY. PLEASE READ THESE PAGES AS WELL AS EACH ANNUAL STATEMENT RECEIVED.

SCHEDULE OF BENEFITS AND COSTS

| BENEFITS | FACE AMOUNT | MONTHLY COSTS | PREMIUM PERIOD |
|---|---|---|---|
| THIS PLAN OF INSURANCE | $1,750,000.00 | SEE PAGE 3A | TO INSURED'S AGE 95 |

LEVEL DEATH BENEFIT:  THE FACE AMOUNT NET THE SUM OF ALL PARTIAL WITHDRAWALS AND OUTSTANDING POLICY LOANS WILL BE PAYABLE UPON THE INSURED'S DEATH.  EACH PARTIAL WITHDRAWAL WILL CAUSE A DECREASE IN THE DEATH BENEFIT.


GUARANTEED MAXIMUM MONTHLY CHARGES FOR POLICY 4183333
(BASED ON THE ATTAINED AGE OF THE INSURED)

| INSURED'S ATTAINED AGE | POLICY YEAR | RISK RATE PER $1000 FOR INSURED |
|---|---|---|
| 51 | 1 | 0.45 |
| 52 | 2 | 0.49 |
| 53 | 3 | 0.54 |
| 54 | 4 | 0.59 |
| 55 | 5 | 0.65 |
| 56 | 6 | 0.72 |
| 57 | 7 | 0.79 |
| 58 | 8 | 0.87 |
| 59 | 9 | 0.96 |
| 60 | 10 | 1.05 |
| 61 | 11 | 1.16 |
| 62 | 12 | 1.29 |
| 63 | 13 | 1.43 |
| 64 | 14 | 1.59 |
| 65 | 15 | 1.76 |
| 66 | 16 | 1.95 |
| 67 | 17 | 2.16 |
| 68 | 18 | 2.38 |
| 69 | 19 | 2.62 |
| 70 | 20 | 2.89 |
| 71 | 21 | 3.25 |
| 72 | 22 | 3.56 |
| 73 | 23 | 3.97 |
| 74 | 24 | 4.43 |
| 75 | 25 | 4.92 |
| 76 | 26 | 5.45 |
| 77 | 27 | 6.01 |
| 78 | 28 | 6.58 |
| 79 | 29 | 7.19 |
| 80 | 30 | 7.87 |
| 81 | 31 | 8.62 |
| 82 | 32 | 9.47 |
| 83 | 33 | 10.42 |
| 84 | 34 | 11.47 |
| 85 | 35 | 12.59 |
| 86 | 36 | 13.75 |
| 87 | 37 | 14.95 |
| 88 | 38 | 16.16 |
| 89 | 39 | 17.41 |
| 90 | 40 | 18.69 |
| 91 | 41 | 20.05 |
| 92 | 42 | 21.52 |
| 93 | 43 | 23.16 |
| 94 | 44 | 25.26 |

GUARANTEED PAID UP RATE AT AGE 95: $912.36 PER $1000



CUMULATIVE PREMIUM REQUIRED FOR ADDITIONAL INTEREST FOR POLICY 4183333

| POLICY YEAR | CUMULATIVE AMOUNT |
|---|---|
| 6 | $154,665.00 |
| 7 | $163,537.50 |
| 8 | $163,537.50 |
| 9 | $163,537.50 |
| 10 | $163,537.50 |
| 11 | $163,537.50 |
| 12 | $163,537.50 |
| 13 | $163,537.50 |
| 14 | $163,537.50 |
| 15 | $163,537.50 |
| 16 | $163,537.50 |
| 17 | $163,537.50 |
| 18 | $163,537.50 |
| 19 | $163,537.50 |
| 20 | $163,537.50 |
| 30 | $163,537.50 |
| 40 | $163,537.50 |

X223LD

# INDEX

**SOME TERMS USED**                                            **Page 7**

## OWNERSHIP PROVISIONS
Beneficiary . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Rights of Owner . . . . . . . . . . . . . . . . . . . . . . . . 7

## GENERAL PROVISIONS
Additional Premium Payments . . . . . . . . . . . . . . . . . . 8
Age . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Annual Statement . . . . . . . . . . . . . . . . . . . . . . . . 9
Contract . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
Grace Period . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Incontestability . . . . . . . . . . . . . . . . . . . . . . . . 7
Non-Participating . . . . . . . . . . . . . . . . . . . . . . . 9
Payment of Premiums . . . . . . . . . . . . . . . . . . . . . . 8
Periodic Premium Amount . . . . . . . . . . . . . . . . . . . . 8
Policy Years and Policy Anniversaries . . . . . . . . . . . . . 9
Projection of Benefits and Values . . . . . . . . . . . . . . . 9
Reinstatement . . . . . . . . . . . . . . . . . . . . . . . . . 8
Suicide Exclusion . . . . . . . . . . . . . . . . . . . . . . . 8

## POLICY VALUES, LOAN, AND NONFORFEITURE PROVISIONS
Change of Death Benefit Option . . . . . . . . . . . . . . . . .10
Continuation of Insurance . . . . . . . . . . . . . . . . . . .11
Conversion to a New Policy . . . . . . . . . . . . . . . . . . .10
Cost of Insurance . . . . . . . . . . . . . . . . . . . . . . .10
Death Benefit . . . . . . . . . . . . . . . . . . . . . . . . . 9
Decrease of Face Amount . . . . . . . . . . . . . . . . . . . .10
Expense Charge . . . . . . . . . . . . . . . . . . . . . . . . .10
How Values Are Computed . . . . . . . . . . . . . . . . . . . .13
Loan Interest . . . . . . . . . . . . . . . . . . . . . . . . .11
Loan Value . . . . . . . . . . . . . . . . . . . . . . . . . . .11
Nonforfeiture Benefit . . . . . . . . . . . . . . . . . . . . .13
Paid-Up Life Insurance . . . . . . . . . . . . . . . . . . . . .11
Partial Withdrawal . . . . . . . . . . . . . . . . . . . . . . .12
Policy Loan . . . . . . . . . . . . . . . . . . . . . . . . . .11
Policy Value Account . . . . . . . . . . . . . . . . . . . . . .11
Postponement . . . . . . . . . . . . . . . . . . . . . . . . . .12
Risk Rate . . . . . . . . . . . . . . . . . . . . . . . . . . .10
Surrender Benefit . . . . . . . . . . . . . . . . . . . . . . .12
Surrender Charge . . . . . . . . . . . . . . . . . . . . . . . .12
Tax Considerations . . . . . . . . . . . . . . . . . . . . . . .12

## METHOD OF PAYMENT PROVISIONS
Annuity Exchange Privilege . . . . . . . . . . . . . . . . . . .13
Availability of Options . . . . . . . . . . . . . . . . . . . .14
Commutation of Payments . . . . . . . . . . . . . . . . . . . .14
Date and Frequency of Payments . . . . . . . . . . . . . . . . .14
Death Benefit Proceeds . . . . . . . . . . . . . . . . . . . . .14
How to Elect Method of Payment Option . . . . . . . . . . . . .14
Method of Payment . . . . . . . . . . . . . . . . . . . . . . .13
Settlement on Death of Payee . . . . . . . . . . . . . . . . . .14

THIS IS A BLANK PAGE

X223

## Some Terms Used

*"attained age"* - means the age of the Insured, nearest birthday, as of the Policy Date and each policy anniversary thereafter.

*"cash value"* - means the Policy Value Account less surrender charges.

*"current interest rate"* - means the interest rate that will be credited to the non-borrowed portion of the Policy Value Account. It will be determined periodically by the Company. The current interest rate will never be less than 4% per year.

*"Insured"* - means the person named on Page 3 as the Insured.

*"proceeds"* - means any death benefits payable under the policy less any policy loans.

*"United States Headquarters"* - means the office for the Company's United States operations. Written requests should be mailed to P. O. Box 1700, Denver, Colorado 80201.

*"written notice"* - when needed, must be in a form acceptable to the Company and must be sent to the Company's United States Headquarters. Notices or statements from the Company will be sent to the Owner's last address of record.

## Ownership Provisions

### RIGHTS OF OWNER

While the Insured is living, all benefits and rights under this policy belong to the Owner. However, they are subject to the rights of any irrevocably named beneficiary.

The Owner may by written notice:
- transfer ownership.
- name a Secondary Owner.

When recorded, a transfer of ownership or the naming of a Secondary Owner will take effect as of the date the notice was signed. This is subject to any payment made or act of the Company before recording.

A transfer of ownership will revoke any designation of a Secondary Owner. It will not change a beneficiary. All benefits and rights under this policy will belong to the new Owner, subject to the terms and conditions of the policy and the interest of any recorded assignee.

The Owner may assign this policy while the Insured is living. The Company will not recognize an assignment until the original or a true copy is recorded at its United States Headquarters. The Company is not responsible for the validity of any assignment.

### BENEFICIARY

While the Insured is living, the Owner may change the beneficiary by giving written notice. A recorded change of beneficiary will take effect as of the date the notice was signed. A change of beneficiary is subject to any payment made or other act of the Company before recording.

Unless otherwise provided in the designation of beneficiary:
- if a beneficiary dies before the Insured, that beneficiary's interest will pass to any surviving beneficiary.
- if there is more than one surviving beneficiary, the interest will be shared equally.
- if there is no surviving beneficiary, the interest will pass to the Owner.

## General Provisions

### THE CONTRACT

This policy and the application for it form the entire contract. A copy of the application is attached. After issue, amendments agreed upon in writing are part of the contract.

In the absence of fraud, all statements in the application are considered representations and not warranties. Only statements in the application will be used to defend a claim or to cancel the policy.

Only the President, a Vice-President, the Secretary, or the Actuary of the Company can change or waive any provisions of the policy.

### INCONTESTABILITY

This policy will not be contested after it has been in force during the lifetime of the Insured for 2 years from the Issue Date. However, this 2 year limit does not apply to:
(a) benefits in the event of disability; or

(b) additional insurance in the event of accidental death.

# General Provisions (continued)

In the event the Owner changes the Death Benefit Option in accordance with the change of Death Benefit Option provision or converts to a new policy:
- the change will in like manner be incontestable.
- the death benefit paid will not be less than the previous amount that would have been paid prior to the change.

## SUICIDE EXCLUSION

If the Insured commits suicide, while sane or insane, within 2 years from the Issue Date (1 year if issued in Colorado or North Dakota), the Company will pay only the premiums paid on this policy.

In the event of suicide, while sane or insane, within 2 years of the effective date of the increase (1 year if issued in Colorado or North Dakota), and after a change in the Death Benefit option that results in a higher Death Benefit or a conversion to a policy of higher Face Amount, the Company will pay:
- the same death benefit that would have been in effect for those 2 years (1 year if issued in Colorado or North Dakota) if there had been no change in the Death Benefit option or conversion to a new policy

          plus
- the Cost of Insurance for the difference between the two Death Benefits.

## PAYMENT OF PREMIUMS

Premiums are to be paid to the Company's United States Headquarters or to one of its authorized agents.

The first premium is due on or before the Policy Date shown on Page 3. All premiums after the first are payable in advance and will be due on the first day of any month in which the Cost of Insurance exceeds the Policy Value Account. Subject to limitations as provided in this policy, premiums paid after the first may be paid in any amount and at any time before the paid-up life insurance provision goes into effect. Receipts will be furnished upon written request.

## GRACE PERIOD

The first day of each month is the due date for any premium needed for that month. Except for the first premium:
- if the amount in the Policy Value Account, less any outstanding policy loans, on the last day of a month is not sufficient to cover the monthly deduction for the Cost of Insurance for the next month, a grace period of 60 days will be allowed for the payment of a sufficient amount; or
- if the premium payments required by the continuation of insurance provision on Page 11 are not met, then a grace period of 60 days will be allowed for the payment of a sufficient amount.

Coverage will remain in force during the grace period. If the premium due is not paid within the grace period and if there is no cash value, all coverage under this policy will cease at the end of the 60 day period. If the premium due is not paid within the grace period and there is a cash value, all coverage under this policy will continue as a paid-up policy as described in the Non-forfeiture Benefit provision.

Notice of such premium due will be mailed to the Owner and any assignee of record at least 31 days prior to the date coverage will cease.

If the Insured dies during the grace period, any unpaid Cost of Insurance amounts will be deducted from the proceeds.

## PERIODIC PREMIUM AMOUNT

The Company will recommend a premium amount. The premium schedule shown on Page 3 shows the cumulative amount of premium that must be paid by the end of each of the first five policy years in order to keep the policy in force.

The premium schedule shown on Page 3B shows the cumulative premium amount that must be paid after the fifth policy year in order to receive additional interest.

The amount of premiums recommended may need to be revised, depending on the number of premium payments made, changes in coverage, interest earned, monthly risk rate, and partial withdrawals made.

## ADDITIONAL PREMIUM PAYMENTS

The Owner may make additional premium payments at any time prior to the date the paid-up life insurance provision goes into effect.

The minimum additional premium that will be accepted at one time is $25. No more than one additional premium payment may be made in any one month. The maximum overall premium the Company will accept in a policy year is $300,000 unless prior approval is obtained from the Company. Additional premium payments may also be limited to amounts that will not exceed tax guidelines and jeopardize the tax-exempt status of the policy.

## REINSTATEMENT

This policy may be reinstated within 3 years after coverage ceased unless it has been surrendered.

The Company must receive:
- a written request, signed by the Owner, for reinstatement; and
- evidence of insurability for the Insured and any other person covered by rider; and

X223

# General Provisions (continued)

- payment of the Cost of Insurance for the grace period; and
- payment of an amount equal to 4 months' Cost of Insurance plus $20.00. Such payment less the expense charges will be credited to the Policy Value Account as of the date of reinstatement; and
- payment or reinstatement of any policy loan which was outstanding as of the date the coverage ceased, including interest thereon.

Interest, as stated above, will be 6% per year compounded annually to the date of the policy reinstatement.

Reinstatement will become effective on the date the application for reinstatement is approved by the Company.

Reinstatement of this policy will not extend the 15 year period in which a surrender charge is applicable.

## AGE

If the age of the Insured has been misstated, the benefits payable under this policy will be the sum of the following:

1) the Policy Value Account, less any outstanding policy loans, on the date of such death; and

2) the amount of insurance that the Cost of Insurance (deducted from the Policy Value Account at the beginning of the month in which death occurred) would have bought for the Insured using the correct age.

If the age of the Insured or other person covered under a rider is misstated, the benefit payable under the rider will be the benefit that the amount (deducted from the Policy Value Account at the beginning of the month in which death, disability, or dismemberment occurred) would have bought using the correct age of the Insured or other person.

## POLICY YEARS AND POLICY ANNIVERSARIES

Policy years and anniversaries will be measured from the Policy Date shown on Page 3.

## NON-PARTICIPATING

This policy is non-participating: it does not share in the Company's divisible surplus.

## ANNUAL STATEMENT

Within 30 days after each policy anniversary, the Company will send the Owner a statement showing:

- the Policy Value Account;
- premiums paid and interest credited since the last statement;
- partial surrenders and charges since the last statement;
- outstanding policy loans and loan interest paid since the last statement;
- the surrender charge for the next policy year, if any;
- any further information required by the state in which the policy was issued.

## PROJECTION OF BENEFITS AND VALUES

Upon written request, the Company will provide a projection of future death benefits and cash values. The first projection provided during a policy year will be at no charge. Each additional projection during that policy year will be subject to a maximum fee of $50. This projection will be based on:

- the current Policy Value Account;
- current interest rates;
- coverage amounts and options;
- planned periodic premium amounts; and
- current monthly Risk Rates.

# Policy Values, Loan, And Nonforfeiture Provisions

## DEATH BENEFIT

The option for this policy as of the Issue Date is shown on Page 3. The death benefit is determined by the option in effect at the date of death.  The option, which may not be changed more than once each policy year, is subject to the Company's approval and a $100 fee for each change.

*Option 1:* Level Death Benefit
The death benefit will be the greater of:

- the Face Amount shown on the current Page 3 less the sum of all partial withdrawals taken; and
- the Policy Value Account on the date of death times the applicable Corridor Factor shown in Table 4.

The death benefit will be reduced by the amount of any outstanding loans.

*Option 2:* Coverage Plus
The death benefit will be the greater of:

- the Face Amount shown on the current Page 3 plus the Policy Value Account on the date of death; and
- the Policy Value Account on the date of death times the applicable Corridor Factor shown in Table 4.

The death benefit will be reduced by the amount of any outstanding loans.

# Policy Values, Loan, And Nonforfeiture Provisions (continued)

## CHANGE OF DEATH BENEFIT OPTION

After the first policy year, but not more than once each policy year, the Owner may change the death benefit option by written request. Any change will be effective on the first day of the month following the date the Company approves the request. A change in the death benefit option is subject to the following conditions:

- A $100 fee will be deducted from the Policy Value Account for each change.
- If the change is from Option 1 to Option 2, the amount payable upon death will remain the same and the new Face Amount, at the time of the change, will equal the prior Face Amount less the Policy Value Account. Evidence of insurability may be required.
- If the change is from Option 2 to Option 1, the amount payable upon death will remain the same and the new Face Amount, at the time of the change, will equal the prior Face Amount plus the Policy Value Account.

## DECREASE OF FACE AMOUNT

By written request, the Owner may at any time decrease the Face Amount provided by this policy. The following conditions apply.

A request for a decrease in the Face Amount:

- will become effective on the first day of the month following receipt of the request; and
- will apply first to the most recent increase or increases in coverage for purposes of the Incontestability provision.

The amount of the decrease will be subject to a proportionate surrender charge as described in the surrender charge provision on Page 12.

## CONVERSION TO A NEW POLICY

By written request, the Owner may at any time convert this policy to a policy of higher Face Amount. The following conditions apply.

A request to convert to a policy of higher Face Amount:

- must be applied for on a form acceptable to the Company;
- will, with regard to the difference in Face Amounts, be subject to evidence of insurability satisfactory to the Company;
- will be effective on the first day of the month following the approval of the request to convert;
- must result in a Face Amount at least $25,000 higher than the previous Face Amount;
- will be allowed prior to age 80; and
- will not be subjected to a fee;

Once converted to a new policy:

- the difference between the two Face Amounts will be incontestable after the higher Face Amount has been in force during the lifetime of the Insured for 2 years from its effective date.
- if the Insured commits suicide, while sane or insane, the Company will pay the amount described in the Suicide Exclusion Provision on Page 8.

Conversion Amount

- The Policy Value Account from the prior policy will be transferred into the Policy Value Account of the current policy.
- There will be no surrender charge applied at the time of conversion.
- The expense charge will not be deducted from the Policy Value Account transferred.

Except as described above, all other policy provisions will start anew under the converted policy.

## COST OF INSURANCE

An amount will be deducted on the first day of each month from the Policy Value Account to pay the Cost of Insurance. The Cost of Insurance is calculated on the first day of each month and is equal to:

the death benefit less the Policy Value Account on the last day of the previous policy year, multiplied by the current monthly Risk Rate for the Insured's attained age

plus

the extra premium for any rated premium class

plus

the monthly service charge shown on Page 3.

## RISK RATE

The maximum monthly Risk Rate is shown on Page 3A. The Company may charge a lower monthly Risk Rate. The maximum Risk Rates shown on Page 3A are based on the 1980 Commissioners Standard Ordinary Mortality Tables A and G at an interest rate of 4% per year.

Any change in the monthly Risk Rate will be made uniformly by class.

## EXPENSE CHARGE

The expense charge for this policy is shown on Page 3.

The charge is a percentage of all premiums paid. This charge is guaranteed and may not be increased.

# Policy Values, Loan, And Nonforfeiture Provisions (continued)

The expense charge will be deducted from each premium paid. This would include any premium paid to reinstate the policy.

## POLICY VALUE ACCOUNT

Each premium, less any expense charge, will be credited to the Policy Value Account on the date received at the Company's United States Headquarters. On the first day of each month a deduction will be made from this account for the Cost of Insurance, any loan interest due, and the cost of any coverage provided by rider.

Each premium, less any expense charge, will earn interest as of the date premiums are received at the Company's United States Headquarters. On the first day of each month the account will be credited with the interest earned in the previous month. The interest credited to the portion of the Policy Value Account not being used as collateral for a policy loan will be the greater of:

- the current interest rate and
- 4% per year.

The entire Policy Value Account less any outstanding loans will be credited with additional interest after the fifth policy year for an Insured whose issue age is less than 50, provided the premium requirement shown on Page 3B is met. This interest will be credited on all funds in the Policy Value Account less any outstanding loans as shown below:

| Policy Years | Additional Interest |
| --- | --- |
| 6 through 10 | .75% of Policy Value Account less any outstanding loans |
| 11 through 15 | 1.00% of Policy Value Account less any outstanding loans |
| 16 + | 1.25% of Policy Value Account less any outstanding loans |

The entire Policy Value Account less any outstanding loans will be credited with additional interest after the fifth policy year for an Insured whose issue age is 50 or above, provided the premium requirement shown on Page 3B is met. This interest will be credited on all funds in the Policy Value Account less any outstanding loans as shown below:

| Policy Years | Additional Interest |
| --- | --- |
| 6 through 10 | 1.00% of Policy Value Account less any outstanding loans |
| 11 through 15 | 1.25% of Policy Value Account less any outstanding loans |
| 16 + | 1.50% of Policy Value Account less any outstanding loans |

## CONTINUATION OF INSURANCE

Coverage under this policy or any attached riders will continue until the Policy Value Account less any outstanding loans is insufficient to cover the monthly Cost of Insurance.

For the first five policy years, if premium payments do not meet or exceed the schedule shown on Page 3:

- and there is no cash value, the grace period provision will go into effect. After the 60 day grace period, the policy and any attached riders will lapse.
- and there is a cash value, the grace period will go into effect. After the 60 day grace period, coverage under this policy will continue as paid-up insurance for a reduced level benefit as described in the Nonforfeiture Benefit provision.

## POLICY LOAN

While this policy is in force, the Owner may obtain a loan from the Company on the security of the policy. The amount of the loan cannot be more than the loan value.

Interest credited on the portion of the Policy Value Account being used as collateral for a policy loan will be the lesser of:

- the current interest rate and
- 5 1/2% per year.

However, in no instance will the interest credited be less than the guaranteed interest rate of 4% per year.

A policy loan will be a first lien on the policy in favor of the Company.

The Owner must give written notice if any part of a premium is to be applied to repay a policy loan. The expense charge will not apply to repayments of policy loans.

## LOAN VALUE

The maximum loan value at any time equals the Policy Value Account, less the surrender charge and less any outstanding loans on the first day of the current month.

## LOAN INTEREST

Policy loans will bear interest at 8% per year, payable in arrears. Loan interest will be deducted from the Policy Value Account on the first day of each month. The loan interest charged will always be greater than the interest credited on loaned amounts.

## PAID-UP LIFE INSURANCE

If the Insured is living and the policy is in force on the policy anniversary at attained age 95, the entire Policy Value Account less any policy loans will be applied as a net single premium to purchase paid-up insurance up to, but not exceeding, the Face

# Policy Values, Loan, And Nonforfeiture Provisions (continued)

Amount payable upon the death of the Insured. The Company will refund any excess cash value resulting from the purchase directly to the Owner. This net single premium will be based on the 1980 Commissioners Standard Ordinary Mortality Table and the greater of:

- the current rate used by the Company; and
- the minimum guaranteed rate of 4%.

The paid-up policy may be surrendered at any time. If it is surrendered within 30 days after a policy anniversary, the cash value will not be less than it would have been on that policy anniversary.

## TAX CONSIDERATIONS

It is the intent of this policy to always be considered life insurance for tax purposes. If the Company determines in its sole opinion, at any time, that the cash value has reached an amount that may jeopardize the tax-exempt status of the proceeds payable upon death, it reserves the right to refund the portion of the cash value in excess of allowable limits for tax exempt purposes. Also, the Company reserves the right to refund any portion of the cash value accumulating in an amount that would be charged as current interest income to the Owner.

It may be necessary periodically to apply tests to determine the tax status of the policy. However, the Company does not give tax advice and this provision should not be construed to mean that proceeds and policy values will be exempt from future actions of any tax authority.

## SURRENDER BENEFIT

The Owner may surrender this policy for its Surrender Benefit. The Surrender Benefit is the Policy Value Account less any outstanding policy loans and surrender charge applicable on the date of surrender.

## SURRENDER CHARGE

If the policy is surrendered during the first 15 policy years a surrender charge will be deducted from the Policy Value Account. The surrender charge is calculated by multiplying the Face Amount of the policy by the appropriate surrender charge factor shown in Table 3 on Page 16. If the surrender request is to be effective on the last day of a policy year, the surrender charge will be that in effect for the following policy year, as shown in Table 3 on Page 16.

In the event the Owner changes the death benefit option prior to the date of surrender, the highest Face Amount will be used. However, any resulting change in the Face Amount will not extend the 15 year period in which a surrender charge is applicable.

A decrease of Face Amount is subject to a proportionate surrender charge which is calculated by dividing the decrease in Face Amount by the prior Face Amount and then multiplying that ratio by the total surrender charge.

During the first 15 policy years, the surrender charge will be waived:

- on death of any person covered under a spouse or children's rider for a one year period after the death of such person; or
- on the portion of premiums, with interest, refunded due to a tax consideration; or
- if the policy is surrendered during a period of continuous total disability of the Insured that has lasted at least 6 months. Total disability in this case means that, directly due to injury or sickness, the Insured cannot work at the main duties of his or her regular job.

Any charge paid as the result of a partial withdrawal in the same policy year as a total surrender will be applied to reduce the surrender charge. In subsequent years, the surrender charge will be reduced proportionately to reflect the surrender charge paid for previous partial withdrawals.

## PARTIAL WITHDRAWAL

The Owner may make up to two partial withdrawals each policy year from the Policy Value Account. The maximum amount that may be withdrawn is the Surrender Benefit.

A proportionate surrender charge will be applied to each partial withdrawal. The proportionate surrender charge is calculated by dividing the partial withdrawal amount by the total Policy Value Account and then multiplying that ratio by the total surrender charge.

The Policy Value Account will be reduced by the partial withdrawal amount and the proportionate surrender charge.

A $50 administrative fee, in addition to the surrender charge (if any) will be charged for each partial withdrawal. This amount will be deducted from the Policy Value Account.

The minimum partial withdrawal amount is $100. Partial withdrawals may not be repaid directly into the Policy Value Account. Any payments received will be subject to the Additional Premium Payments provision.

## POSTPONEMENT

If the Company receives a request for surrender, partial withdrawal, or loan, it may postpone any payment for not more than 6 months (30 days if the policy was issued in West Virginia) other than for payment of any premium to the Company.

X223

# Policy Values, Loan, And Nonforfeiture Provisions (continued)

If the payment of surrender proceeds is postponed 30 days or more, the Company will pay interest at 4% per year for the time of postponement.

### NONFORFEITURE BENEFIT

If payments to the Company are stopped, the Continuation of Insurance provision applies. If the Owner elects, the policy can be continued as a paid-up policy. The election must be made:

- while the Insured is living; and
- before attained age 95.

If the policy is to be continued as paid-up insurance, no further payments will be accepted. This insurance will be for a reduced level benefit payable at the Insured's death. This benefit will be the amount that the Surrender Benefit would provide if applied as a net single premium as of the date this election is received by the Company.

The amount of the paid-up insurance can not exceed the death benefit of the policy as of the date the paid-up insurance becomes effective. Any excess of the Surrender Benefit not needed to purchase the paid-up insurance will be refunded to the Owner.

Coverage provided by any rider attached to the policy will not be continued under the nonforfeiture benefit.

### HOW VALUES ARE COMPUTED

The cash value at the end of any policy year is always at least as great as that required by the Standard Nonforfeiture Law.

Net single premiums are based on the 1980 Commissioners Standard Ordinary Mortality Tables A and G. Net single premiums and guaranteed cash values are computed at an interest rate of 4% per year. These computations assume that death benefits are to be paid at the end of the policy year in which death occurs. The net single premium could be lower and the cash value could be higher than indicated above. Any net single premium will be computed on the basis of the Insured's attained age and premium class.

The guaranteed cash value of a paid-up nonforfeiture benefit is equal to the present value of the future benefits as of the date this election is received by the Company. The guaranteed cash value of paid-up insurance as provided in the paid-up life insurance provision is equal to the present value of the future death benefits as of the date the provision goes into effect.

A detailed statement of the method of computing the guaranteed values of this policy has been filed with the Insurance Department of the state in which this policy is delivered.

# Method Of Payment Provisions

### ANNUITY EXCHANGE PRIVILEGE

On or after attained age 55 of the Insured and after the fifth policy year, this policy may be exchanged for a single premium immediate annuity contract on the life of the Insured. The amount exchanged will be the entire Policy Value Account less any outstanding loans. The annuity must be on a form then issued by the Company or, with the Company's consent, a subsidiary of the Company. Also, on or after attained age 55 of the Insured and after the fifth policy year, Options 2, 3, or 4 of the Method of Payment provision may be elected for the Insured. If Option 2 or 3 is elected, payments must be on the basis of life annuity or payments must last at least 10 years.

### METHOD OF PAYMENT

All or part of the proceeds payable on death of the Insured may be applied under one or more of the following options. If required by law, the Company will pay interest on the proceeds from the date of death or maturity to the date of settlement at a rate not less than that required by law.

*Option 1: Deposit at Interest*

The Company will hold the policy proceeds during the payee's lifetime. Interest will be paid on these proceeds at 12-, 6-, 3- or 1-month intervals, as elected. The guaranteed interest rate is 4% per year. The Company may allow a higher rate from time to time.

*Option 2: Income of Specified Amount*

The Company will pay an income at 12-, 6-, 3-, or 1-month intervals of the amount elected. Payments must total at least $60 a year for each $1000 of proceeds. Unpaid proceeds will be credited with interest at a guaranteed rate of 4% per year. The Company may allow a higher rate from time to time. Payments will continue until the proceeds and interest are used up. Payments must be completed within 30 years.

# Method Of Payment Provisions (Continued)

*Option 3: Income for a Specified Period*

The Company will pay an income at 12-, 6-, 3-, or 1-month intervals for the number of years elected. The income will be determined from Table 1. The amounts shown in Table 1 on Page 15 are based on an interest rate of 4% per year.

Payments after the first may be increased from time to time by additional interest earnings.

*Option 4: Life Annuity with Guaranteed Period*

The Company will pay a monthly income for the guaranteed period elected. Thereafter, payments will be continued for the lifetime of the payee.

Payments will be determined from Table 2 on Page 15.

The guaranteed period elected may be 10 years or may be the period referred to as "Installment Refund." Under the Installment Refund period, payments will be made until the total of the guaranteed payments paid equals the proceeds applied.

Payments after the first may be increased from time to time by surplus earnings. The Company will require proof of the payee's age before payments begin. The Company may also require proof of survival for continued payment.

## HOW TO ELECT METHOD OF PAYMENT OPTION

Written notice is required to elect, change, or revoke a Method of Payment. When recorded, the notice will take effect as of the date it was signed. An election, change, or revocation is subject to any payment made or action taken by the Company before recording.

## DEATH BENEFIT PROCEEDS

While the Insured is living, the Owner may elect a Method of Payment for the beneficiary. The Owner may revoke or change a prior election.

If no election is in effect at the death of the Insured, the beneficiary may make an election within 90 days. A beneficiary who has elected Option 1 may elect another option within 2 years after the Insured's death. The Owner may elect that the right to commute payments under an option is not available.

## AVAILABILITY OF OPTIONS

The minimum amount that may be applied under any option is $2,000.

If this policy is assigned as collateral security, the Company will pay any amount due the assignee in one sum. Any remaining proceeds will remain under the method elected.

## DATE AND FREQUENCY OF PAYMENTS

The first payment under Options 2, 3, and 4 will be due on the date the proceeds are applied. The first payment under Option 1 will be due at the end of the first payment interval.

Payments under an option will not be made more often than once a year unless payment is at least $100 on each payment due.

## SETTLEMENT ON DEATH OF PAYEE

If the payee dies, and no provision has been made in the election of a Method of Payment, any guaranteed payments or proceeds remaining unpaid will be payable in one sum to the payee's estate.

The single sum payment will be:

Under Options 1 and 2 - the unpaid proceeds remaining with the Company and any interest accrued to the date of death.

Under Options 3 and 4 - the commuted value, as of the date of death, of any remaining guaranteed payments. An interest rate of 4% per year, compounded yearly, will be used.

## COMMUTATION OF PAYMENTS

Unless otherwise provided in the election of a Method of Payment:

Under Options 1 and 2 - the payee may make withdrawals of at least $100 each from the proceeds.

Under Option 3 - the payee may obtain the commuted value of any remaining guaranteed payments. An interest rate of 4% per year, compounded yearly, will be used.

Where the right to commute payments under an option is not available, the right to assign proceeds or payments under the elected option will also be excluded.

## TABLE 1

# INCOME FOR SPECIFIED PERIOD

Monthly Payment for Each $1,000 of Proceeds

| Year | Payment |
|------|---------|
| 1 | 84.84 |
| 3 | 29.40 |
| 4 | 22.48 |
| 5 | 18.33 |
| 6 | 15.57 |
| 7 | 13.60 |
| 8 | 12.12 |
| 9 | 10.98 |
| 10 | 10.06 |
| 11 | 9.32 |
| 12 | 8.70 |
| 13 | 8.17 |
| 14 | 7.73 |
| 15 | 7.34 |
| 16 | 7.01 |
| 17 | 6.71 |
| 18 | 6.45 |
| 19 | 6.22 |
| 20 | 6.01 |
| 21 | 5.82 |
| 22 | 5.65 |
| 23 | 5.50 |
| 24 | 5.36 |
| 25 | 5.23 |
| 26 | 5.11 |
| 27 | 5.00 |
| 28 | 4.90 |
| 29 | 4.81 |
| 30 | 4.72 |

To determine the amount for quarterly payment multiply the monthly payment by 2.99; for semi-annual by 5.95; and for annual by 11.79.

## TABLE 2
### LIFE INCOME WITH GUARANTEED PERIOD
Monthly Payment for Each $1,000 of Proceeds
(Based on payee's age, nearest birthday, on due date of first payment)

| Age of Payee | Guaranteed Period 10 Years | Installment Refund | Age of Payee | Guaranteed Period 10 Years | Installment Refund |
|------|------|------|------|------|------|
| 0 | 3.43 | 3.43 | | | |
| 1 | 3.44 | 3.43 | 46 | 4.33 | 4.27 |
| 2 | 3.45 | 3.44 | 47 | 4.38 | 4.31 |
| 3 | 3.46 | 3.45 | 48 | 4.44 | 4.36 |
| 4 | 3.46 | 3.46 | 49 | 4.48 | 4.41 |
| 5 | 3.47 | 3.47 | 50 | 4.54 | 4.46 |
| 6 | 3.47 | 3.47 | 51 | 4.60 | 4.51 |
| 7 | 3.48 | 3.48 | 52 | 4.66 | 4.57 |
| 8 | 3.49 | 3.49 | 53 | 4.73 | 4.63 |
| 9 | 3.50 | 3.49 | 54 | 4.80 | 4.69 |
| 10 | 3.51 | 3.50 | 55 | 4.87 | 4.76 |
| 11 | 3.52 | 3.51 | 56 | 4.95 | 4.82 |
| 12 | 3.53 | 3.52 | 57 | 5.02 | 4.89 |
| 13 | 3.54 | 3.53 | 58 | 5.11 | 4.96 |
| 14 | 3.55 | 3.54 | 59 | 5.20 | 5.05 |
| 15 | 3.56 | 3.55 | 60 | 5.30 | 5.13 |
| 16 | 3.57 | 3.56 | 61 | 5.40 | 5.22 |
| 17 | 3.58 | 3.57 | 62 | 5.51 | 5.31 |
| 18 | 3.59 | 3.58 | 63 | 5.62 | 5.41 |
| 19 | 3.61 | 3.60 | 64 | 5.74 | 5.52 |
| 20 | 3.62 | 3.61 | 65 | 5.86 | 5.63 |
| 21 | 3.63 | 3.62 | 66 | 6.00 | 5.75 |
| 22 | 3.65 | 3.64 | 67 | 6.13 | 5.88 |
| 23 | 3.66 | 3.65 | 68 | 6.28 | 6.01 |
| 24 | 3.68 | 3.67 | 69 | 6.43 | 6.15 |
| 25 | 3.70 | 3.68 | 70 | 6.59 | 6.30 |
| 26 | 3.71 | 3.70 | 71 | 6.75 | 6.45 |
| 27 | 3.73 | 3.72 | 72 | 6.92 | 6.62 |
| 28 | 3.75 | 3.74 | 73 | 7.09 | 6.80 |
| 29 | 3.77 | 3.76 | 74 | 7.26 | 6.98 |
| 30 | 3.79 | 3.78 | 75 | 7.44 | 7.18 |
| 31 | 3.81 | 3.80 | 76 | 7.62 | 7.39 |
| 32 | 3.84 | 3.82 | 77 | 7.80 | 7.61 |
| 33 | 3.87 | 3.84 | 78 | 7.98 | 7.84 |
| 34 | 3.89 | 3.87 | 79 | 8.15 | 8.08 |
| 35 | 3.92 | 3.90 | 80 | 8.32 | 8.34 |
| 36 | 3.95 | 3.92 | 81 | 8.49 | 8.61 |
| 37 | 3.98 | 3.95 | 82 | 8.64 | 8.89 |
| 38 | 4.01 | 3.98 | 83 | 8.79 | 9.18 |
| 39 | 4.04 | 4.01 | 84 | 8.92 | 9.49 |
| 40 | 4.08 | 4.04 | 85 | 9.05 | 9.80 |
| 41 | 4.12 | 4.07 | 86 | 9.16 | 10.13 |
| 42 | 4.15 | 4.11 | 87 and over | 9.26 | 10.48 |
| 43 | 4.20 | 4.15 | | | |
| 44 | 4.24 | 4.18 | | | |
| 45 | 4.29 | 4.23 | | | |

TABLE 3

## SURRENDER CHARGE FACTORS

### FOR ISSUE AGES 0 THROUGH 24

| Policy Year | Surrender Charge Per $1000 Face Amount |
|---|---|
| 1 | $11.50 |
| 2 | 11.50 |
| 3 | 11.50 |
| 4 | 11.50 |
| 5 | 11.50 |
| 6 | 11.50 |
| 7 | 11.50 |
| 8 | 11.50 |
| 9 | 10.50 |
| 10 | 9.00 |
| 11 | 7.50 |
| 12 | 6.00 |
| 13 | 4.50 |
| 14 | 3.00 |
| 15 | 1.50 |
| 16 + | 0 |

### FOR ISSUE AGES 25 AND UP

| | |
|---|---|
| 1 | $15.00 |
| 2 | 15.00 |
| 3 | 15.00 |
| 4 | 15.00 |
| 5 | 15.00 |
| 6 | 15.00 |
| 7 | 13.50 |
| 8 | 12.00 |
| 9 | 10.50 |
| 10 | 9.00 |
| 11 | 7.50 |
| 12 | 6.00 |
| 13 | 4.50 |
| 14 | 3.00 |
| 15 | 1.50 |
| 16 + | 0 |

TABLE 4

## CORRIDOR FACTORS

| Attained Age | Factor | Attained Age | Factor |
|---|---|---|---|
| 0 - 40 | 2.50 | 65 | 1.20 |
| 41 | 2.43 | 66 | 1.19 |
| 42 | 2.36 | 67 | 1.18 |
| 43 | 2.29 | 68 | 1.17 |
| 44 | 2.22 | 69 | 1.16 |
| 45 | 2.15 | 70 | 1.15 |
| 46 | 2.09 | 71 | 1.13 |
| 47 | 2.03 | 72 | 1.11 |
| 48 | 1.97 | 73 | 1.09 |
| 49 | 1.91 | 74 | 1.07 |
| 50 | 1.85 | 75 - 90 | 1.05 |
| 51 | 1.78 | 91 | 1.04 |
| 52 | 1.71 | 92 | 1.03 |
| 53 | 1.64 | 93 | 1.02 |
| 54 | 1.57 | 94 | 1.01 |
| 55 | 1.50 | | |
| 56 | 1.46 | | |
| 57 | 1.42 | | |
| 58 | 1.38 | | |
| 59 | 1.34 | | |
| 60 | 1.30 | | |
| 61 | 1.28 | | |
| 62 | 1.26 | | |
| 63 | 1.24 | | |
| 64 | 1.22 | | |

X223

AMENDMENT TO POLICY PROVISIONS

Because this policy replaces an existing policy, its provisions are amended as follows:

Incontestability and Suicide Exclusion

For the first $ *1,619.000* of the Face Amount of this policy, "Issue Date" means the effective date of coverage under the policy that is being replaced.

Except for this amendment, the provisions of this policy remain unchanged.


Signed for The Great-West Life Assurance Company on the Issue Date.



*K P Kavanagh*
**President**


X-54US

# The Great-West Life Assurance Company

U.S. HEADQUARTERS ⬦ ENGLEWOOD, COLORADO

Policy Number _____ 4,183,333 _____    Branch _____ CHI CN _____

I/We request and authorize The Great-West Life Assurance Company to change the application for insurance dated 13 JULY 1988, as shown below. I/We agree that these changes will have the same effect as if they had been made in the application.

ISSUE POLICY FOR AN AMOUNT OF $1,750,000.

I/We declare that since completion of the medical evidence form dated 26 JULY 1988
(1)  The Insured has not been examined or treated by a physician or health practitioner, except as required by the Great-West Life.
(2)  The Insured has had no illness, disease, injury or operation.
Exceptions _____

I/We agree that these statements are a condition of the delivery of the policy applied for and become part of the contract. The policy shall not take effect unless these statements are true.

Date _____    19 88

                                    _Richard S. Incardella_ (signature)
_____             _____
        Witness                    Signature of Insured

_____             _____
        Witness                    Signature of Applicant
                                   (if other than Insured)

NOTICE TO THE INSURED, APPLICANT AND AGENT:

THIS POLICY MUST NOT BE DELIVERED EITHER DIRECTLY OR BY MAIL NOR CAN THE APPLICANT GAIN POSSESSION OF IT UNTIL THIS FORM IS COMPLETED AND WITNESSED. THE FORM SHOULD THEN BE RETURNED TO THE BRANCH OFFICE.

THE POLICY HAS BEEN ISSUED ASSUMING THIS FORM CORRECTLY REPRESENTS THE FACTS. IF THE APPLICANT OR INSURED HAS INDICATED ANY EXCEPTIONS TO STATEMENTS (1) OR (2), IT SHOULD BE CORRECTED AND RETURNED WITH THE POLICY TO THE BRANCH OFFICE. THE POLICY SHOULD NOT BE DELIVERED.

This form must be completed because:

[] answers to application questions were incomplete or changed and must be verified.

[] application is approved provided insurance benefits applied for are reduced or deleted.

F59 US

APPLICATION FOR INSURANCE TO

THE **Great-West Life** ASSURANCE COMPANY
UNITED STATES HEADQUARTERS · ENGLEWOOD, COLORADO

Branch _____    Policy No. _____    4183333

"Insured" and "Proposed Insured," whenever used in this application, mean "the life proposed for insurance." Statements and answers to questions relate to the "Insured."

**1.** (a) Name of Insured (print) ☑ Mr. ☐ Mrs. ☐ Ms. ☐ Miss

**RICHARD S. INCANDELA**

(b) Place of Birth *Chicago Ill*
(c) Birth Date *12·29·36* (Month/Day/Year)
(d) Age Nearest Birthday *52*
(e) Social Security Number *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*

**2.** Residence (Provide details within past 2 years)
Present *1201 MIDWEST Club Pky.* (Number and Street)
2 Yrs. *OAKBROOK Ill* (City or Town) (State) *60521* (Zip Code)
Previous *12 CROYDON LANE* (Number and Street)
7 Yrs. *OAKBROOK Ill* (City or Town) (State) *60521* (Zip Code)

**3.** Business (Provide details within past 2 years)
Present *Tenneco Inc* (Name of Employer or Firm)
*414 N. CLINTON* (Number and Street)
15 Yrs. *RIVER FOREST, Ill.* (City or Town) (State) *60305-2248* (Zip Code)
Former *N/A* (Name of Employer or Firm)
___ Yrs. *N/A* (City or Town) (State) *N/A* (Zip Code)

**4.** Occupation:
(a) Job Title *PRESIDENT*
(b) Describe Duties *Administration of OFFICE - INVESTMENTS*
(c) Do you have a part time or seasonal job? ☐ Yes ☑ No
(d) Do you plan to change your duties, occupation or country of residence? ☐ Yes ☑ No
If "Yes" to (c) or (d), give details:

**5.** During the past three years have you:
(a) flown, or do you contemplate flying as a pilot, student pilot or crew member? ☐ Yes ☑ No
(b) participated in, or do you contemplate participating in racing (automobile, snowmobile, motorcycle, boat), scuba-diving, sky-diving, hang-gliding, mountain or rock climbing? ☐ Yes ☑ No
(c) had your driver's license suspended or revoked or have you been convicted of a moving violation? ☐ Yes ☑ No
If "Yes" to (a) or (b), complete appropriate questionnaire.
If "Yes" to (c), give details including driver's license number.

**6.** Total Life Insurance and Accidental Death Benefits in force:
(a) Life Insurance $*2,619,000* A.D.B. $*200,000*

| Name of Company | Amount | Plan | Yr. Issued |
|---|---|---|---|
| MASS MUTUAL | 20,000 | W.L. | 1961 |
| " | 20,000 | CON. LIFE | 1971 |
| " | 15,000 | W.L. | 1962 |
| PRUCO INS. | 564,000 | VARIABLE | 1986 |
| FIRST CAPITAL | 1,000,000 | U.L. | 1984 |
| TRANSAMERICA | 1,000,000 | TERM $ | 1987 |

(b) Amount of business insurance included in above: *1984*

**7.** Do you have any disability income coverage provided by individual and/or group policies? ☐ Yes ☑ No
If "Yes" give details:

| Name of Company | Monthly Amount | Benefit Period | Waiting Period | Year Issued |
|---|---|---|---|---|
| | | | | |

**8.** Is this insurance intended to replace any other insurance or annuity? ☑ Yes ☐ No
If "yes" give:
Company Name *SEE ATTACHED PAPERS*
Policy No. *AND POLICY NUMBERS.*

**9.** Are other applications for life or disability income insurance pending or contemplated? ☐ Yes ☑ No
If "Yes" give company name and amount of insurance:

**10.** Have you ever had an application for life or disability income insurance declined, postponed or modified in any way? ☑ Yes ☐ No
If "Yes" give company name and reason: *WEIGHT, But Removed 1988 (See Attached FIRST CAPITAL LIFE LETTER)*

**11.** Beneficiary (Print full name)
(a) Primary *SHARON SUE INCANDELA*
Relationship to Insured *WIFE*
Address (if different from that shown in Section 2) *SAME AS #2*
(b) Secondary *Richard Incandela II - SON AND SHARON*
Relationship to Insured *Suzane Incandela - DAUGHTER Children IN EQUAL SHARES.*

**12.** How payable to the beneficiary:
☒ Cash ☐ Under option _____ (Give details)

**13.** Owner of policy (Insured shall be the Owner unless otherwise indicated):
(a) Name *SHARON SUE INCANDELA* (Print Full Name)
(b) Address *1201 MIDWEST CLUB Pky.* (Number and Street)
*OAKBROOK Il.* (City or Town) (State) *60521* (Zip Code)
(c) Relationship to Insured *WIFE*
(d) Owner's Soc. Sec./Tax I.D. Number *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*

F 600    B-089484

| Life Insurance Applied for: | Disability Income Insurance Applied for: |
|---|---|

**14.** (a) Basic Plan of Insurance: ☐ Par  ☒ Non-par
  Describe fully _FACT ADVANTAGE U.L._
  (b) Amount .................................. $ _2,500,000_
  (c) Universal Life: ☐ Coverage Plus ☒ Level Death
    (For Level Death, the Face Amount decreases each anniversary for a total level death benefit)
  (d) Dividend Options:
    ☐ Cash ☐ Paid-up Addn. ☐ Prem. Red. ☐ Accum.
    ☐ Option _____ with balance to _____
    ☐ Option "g": Amount ..................... $ _____
  (e) Additional Benefits:
    ☐ Spouse Insurance (complete supplement)
    ☐ Children's Term (complete supplement)
    ☐ Additional Ins. No. yrs _____ Gtd. Ins. Amt.
      (X-Rider)™ ........................... $ _____
    ☐ Guaranteed Insurability (complete supplement)
    ☐ Guaranteed Purchase Option ......... $ _____
    ☐ Accidental Death ....................... $ _____
    ☐ Disability Waiver
    ☐ Other: (Describe) _____ $ _____

**15.** Special Dating (Life only) _____ (Month) (Day) (Year)
  Do you wish to date policy to save age? ☒ Yes ☐ No

**16.** Proportionate ☐   Interim ☐
  from _____ 19 ___ to _____ 19 ___

**17.** (a) Mode of Premium Payment:
    ☒ Annual  ☐ Quarterly  ☐ Single
    ☐ Semi-Annual  ☐ Monthly
  (b) Billing Type: ☐ Regular Monthly (life only)
    ☐ Autopay-Regular  ☐ P.S.P. No. _____
    ☐ Autopay-P.S.P. No. ☐ Pension Trust
    ☐ Autopay-Pension Trust ☐ Other _____
  (c) Do you elect the automatic premium loan option?
    ☒ Yes ☐ No

**18.** (a) Plan: ☐ PEP+ ☐ PEP + Graded ☐ P.I.P. ☐ O.O.E.
    ☐ OTHER _____

(b)

| | Amount | | |
|---|---|---|---|
| Full Coverage | Non-Occupational | Benefit Period | Benefits Begin On |
| $ | $ | | day |
| $ | $ | | day |
| $ | $ | | day |

  (c) Additional Benefits:
    ☐ Social Ins. Conditional Disability Income $ _____
    ☐ Health Future Purchase Option $ _____
    ☐ Reduced Qualification Period _____ Days
    ☐ Own Occupation
    ☐ Regular Occupation Extension _____
    ☐ Inflation Protection
    ☐ Lifetime Accident & Lifetime Sickness
    ☐ A.D.&D. $ _____
    ☒ Partial Disability (P.I.P. only)
    ☐ Other _____

**19.** Are you insured under the Workers' Compensation Act?
    ☐ Yes ☐ No

**20.** Occupational Classification:
    ☐ 4A ☐ 3A ☐ 2A ☐ A ☐ B

**21.** Is your employer paying 100% of the premium for this policy?
    ☐ Yes ☐ No

**22.** (a) Earned Income: $ _____ monthly
  Note: If a salaried employee, show earned income before taxes. If self-employed, show earned income before taxes, but after business or office expenses.
  (b) Unearned Income: $ _____ monthly
  Note: Net unearned income is the amount that will continue from investments, rents, and similar sources if you are disabled. Source: _____

**23.** Special Postdating (Disability): _____

---

**24.** Insured's (a) Height: _5_ ft. _11.5_ ins.  (b) Weight: _230_ lbs.
  (c) Has weight changed in the past year? ☒ Yes ☐ No
    Gain: _____ lbs.  Loss: _80_ lbs.

**25.** (a) Have you smoked cigarettes within the last 12 months? ☐ Yes ☒ No
  (b) If "No" do you use tobacco in any other form? Please specify. ☐ Yes ☒ No

**26.** Has a member of the medical profession diagnosed you as having or treated you for Acquired Immune Deficiency Syndrome (AIDS) or AIDS Related Complex (ARC)?
    ☐ Yes ☒ No

**REMARKS:** If answer is "Yes" to any questions, give particulars, including dates and durations, treatments, present status, and physician(s) consulted.

**27.** Name and address of your physician(s): (312) 789-0250
  _DR. INGRID RAISER M.D._
  _333 CHESTNUT STR #104_
  _HINSDALE    ILL.   60521_

  Date last consulted _Sept 1987_
  Reason & results _Complete Physical_
  _PREPAYMENT $10.00 ATTN: PHYSICS_

**Great-West Life**
UN... HEADQUARTERS: ENGLEWOOD, COLORADO

IS INSURANCE BEING APPLIED FOR MEDICALLY ☑ OR NONMEDICALLY ☐ ?
IF NONMEDICAL, COMPLETE QUESTIONS 28, 29, and 30.

Name of Proposed Insured _RICHARD S. INCANDELA_

| | REMARKS: If answer is "Yes" to any questions, give particulars, including dates and durations, treatment, present status, and physician(s) consulted. |
|---|---|
| **28. In the past 10 years, have you had:** | |
| (a) dizziness, fainting, convulsions, chronic headache, nervous breakdown, epilepsy, stroke, or disorder of the brain or nervous system? ☐ Yes ☐ No | |
| (b) asthma, bronchitis, allergies, tuberculosis, pleurisy, emphysema, blood spitting, persistent cough, or disorder of the lungs or respiratory system? ☐ Yes ☐ No | |
| (c) high blood pressure, chest pain, palpitations, heart murmur, heart attack, or disorder of the heart or blood vessels? ☐ Yes ☐ No | |
| (d) ulcer, recurrent indigestion, intestinal bleeding, colitis, jaundice, hemorrhoids, hernia, or disorder of the stomach, intestines, rectum, gallbladder, liver or pancreas? ☐ Yes ☐ No | |
| (e) sugar, albumin, pus or blood in the urine; nephritis, kidney stone, or disorder of the kidneys or bladder? ☐ Yes ☐ No | |
| (f) diabetes, cancer, tumor, gout, venereal disease, or disorder of the prostate or reproductive organs? ☐ Yes ☐ No | |
| (g) backache, rheumatic fever, rheumatism, arthritis, paralysis, or disorder of the muscles or bones, including joints and spine? ☐ Yes ☐ No | |
| (h) recurrent infections, thyroid disorder, enlarged lymph glands, anemia, excess fatigue, or disorder of the glands or blood? ☐ Yes ☐ No | |
| (i) disorder of eyes, ears, nose, throat, or skin (including skin lesions)? ☐ Yes ☐ No | |
| (j) treatment or joined an organization because of alcohol or drug use, or been medically advised to do so? ☐ Yes ☐ No | |
| **29. Have your parents, brothers, or sisters ever had diabetes, high blood pressure, heart or kidney disease?** ☐ Yes ☐ No | |
| **30. In the last 5 years have you:** | |
| (a) missed more than 15 consecutive days from work due to sickness or injury? ☐ Yes ☐ No | |
| (b) been a patient in a hospital, clinic, or other medical facility? ☐ Yes ☐ No | |
| (c) had an EKG, X-ray, blood test, or other diagnostic test? ☐ Yes ☐ No | |
| (d) had a checkup, consultation, illness, surgery, injury, or disease not mentioned in the questions above? ☐ Yes ☐ No | |

**THE FOLLOWING STATEMENT MUST BE READ AND SIGNED FOR ALL APPLICATIONS.**

All statements and answers to questions made in this application and any supplement to it are true and complete to the best of my knowledge and belief. They are a consideration for and a basis of any contract of insurance issued on this application. No information or answer to any question will be deemed communicated to or be binding on the Company unless set out in this application. No agent is authorized to change or waive the terms of this application or of any contract of insurance issued. Except as stated in the Temporary Life Insurance Agreement and/or in the Conditional Disability Income Insurance Agreement, no insurance under this application shall take effect until a policy is delivered and the first premium for it is paid to the Company: a) while the Proposed Insured and all other lives proposed for insurance under this application are living, and b) while, to the best of my knowledge, the statements and answers in all parts of this application continue to be true and complete, without material change as of the time the first premium for the policy is paid.

I certify under penalties of perjury that my Social Security or Tax Identification number shown above is correct.

Signed at _OAK BROOK_ State _Ill_ this _13_ day of _July_ 19_88_

Witness _Terry P. Syed_

Witness _Terry P. Syed_
Signature of Agent

(X) _Richard S. Incandela_
Signature of Proposed Insured

(X) _Sharon S. Incandela_
Signature of Owner (if other than Insured)

Part 2 of Application to

THE **Great-West Life** ASSURANCE COMPANY • HEAD OFFICE • WINNIPEG, CANADA    U.S. HEADQUARTERS, DENVER, CO.

| | | | |
|---|---|---|---|
| Name | Birth Date | *FB* 29 day of 12 | — 1936 |
| RICHARD S. INCANDELA | Height 5' 10 1/2 ..... in. | Weight 226 lbs. | |

| | | |
|---|---|---|
| 1. a. Name and address of your physician: | Dr. ARTHUR KOVEN | |
| | Broadway Medical Center | |
| | Melrose Park Ill | |
| b. Date last consulted and reason: | 1987. General Check up. | |
| c. What treatment or medication was prescribed: | None | |

| | | | | 11. a. | Age if Living | State of Health or Cause of Death | Age at Death |
|---|---|---|---|---|---|---|---|
| 2. To the best of your knowledge and belief, have you been treated for or had any known indication of— | | Yes | No | Father | | Unknown | 77 |
| a. Disorder of eyes, ears, nose or throat? | | ☐ | ☑ | Mother | 85 | Good | |
| b. Dizziness, fainting, convulsions, headache, speech defect, paralysis or stroke; mental or nervous disorder? | | ☐ | ☑ | Brothers & Sisters 2 | B - 62 S - 68 | Good | |
| c. Shortness of breath, persistent hoarseness or cough; blood spitting, bronchitis, pleurisy, asthma, emphysema, tuberculosis or chronic respiratory disorder? | | ☐ | ☑ | | | Brain Ca - 5-51 | |

11. b. Family History — Has any member of your family had diabetes; high blood pressure; heart or kidney disease; or mental illness? Yes ☐ No ☑

Details: Include diagnoses, dates, duration and names and addresses of attending physicians, and medical facilities.

2 h) June 84 - Back Pain.
Good Samaritan Hosp.
38th + Highland
Downers Grove.    Ill 60515
10 days stay.
EKG. x - Rays. Blood. Urine.
Dx Gastritis + Pulled muscle.
No insurance.
Dr. Smith (Staff).

| | Yes | No |
|---|---|---|
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack or other disorder of the heart or blood vessels? | ☐ | ☑ |
| e. Jaundice; intestinal bleeding; ulcer; hernia; appendicitis; colitis; diverticulitis; hemorrhoids; recurrent indigestion or other disorder of the stomach, intestines, liver or gallbladder? | ☐ | ☑ |
| f. Sugar, albumin, blood or pus in urine; venereal disease; stone or other disorder of kidney, bladder, prostate, or reproductive organs? | ☐ | ☑ |
| g. Diabetes; thyroid; elevated cholesterol? | ☐ | ☑ |
| h. Neuritis, sciatica, rheumatism, arthritis, gout, or disorder of the muscles or bones, including the spine (back), or joints? | ☑ | ☐ |
| i. Deformity, lameness or amputation? | ☐ | ☑ |
| j. Disorder of skin, lymph glands, cyst, tumor, or cancer? | ☐ | ☑ |
| k. Allergies; anemia or other disorder of the blood? | ☐ | ☑ |
| 3. Are you now under observation or taking treatment? | ☐ | ☑ |

5, d) Feb. 88 - General Check up.
43.    Dr. ?
Metabolic Health Management
222 E. Ogden Ave
Hinsdale    Ill 60521
EKG. Blood - normal.
4) Lost 80 lbs - Diet
Metabolic Health Management

| | Yes | No |
|---|---|---|
| 4. Have you had any change in weight in the past year? | ☑ | ☐ |
| 5. Have you within the past 5 years: | | |
| a. Had a checkup, consultation, illness, injury, surgery? | ☑ | ☐ |
| b. Missed more than 15 consecutive days due to sickness or injury? | ☐ | ☑ |
| c. Been a patient in a hospital, clinic, sanatorium, or other medical facility? | ☑ | ☐ |
| d. Had electrocardiogram, X-ray, other diagnostic test? | ☑ | ☐ |
| e. Been advised to have any diagnostic test, hospitalization or surgery which was not completed? | ☐ | ☑ |
| f. Had any mental or physical disorder not listed above? | ☐ | ☑ |
| 6. Have you ever received treatment or joined an organization because of alcoholism? | ☐ | ☑ |
| 7. Except as prescribed by a physician, do you currently use drugs or have you received treatment for drug abuse? | ☐ | ☑ |
| 8. Do you smoke cigarettes? If yes, indicate packs per day. | ☐ | ☑ |
| 9. Have you ever requested or received a pension, benefits, or compensation because of an injury, sickness, or disability? | ☐ | ☑ |
| 10. Have you ever had any disorder of menstruation; of pregnancy; or of the breasts or reproductive organs? | N/A | |

I represent I have read the above, that to the best of my knowledge and belief, my statements and answers are complete and true as written, are correctly recorded, and shall form a part of any contract issued on this application.

I hereby authorize any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person, that has any records or knowledge of me or my health, to give to The Great-West Life Assurance Company or its reinsurers any such information. A photographic copy of this authorization shall be as valid as the original.

Signature of Insured

# The Great-West Life Assurance Company

ADJUSTABLE DEATH BENEFIT.  PROCEEDS PAYABLE AT DEATH SUBJECT TO POLICY
PROVISIONS.  FLEXIBLE PREMIUMS PAYABLE WHILE INSURED IS ALIVE.
NON-PARTICIPATING:  NOT ELIGIBLE FOR DIVIDENDS.

X223

THE GREAT-WEST LIFE ASSURANCE COMPANY
HEAD OFFICE - WINNIPEG, CANADA
UNITED STATES HEADQUARTERS - ENGLEWOOD, COLO.