UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD INCANDELA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 07-cv-7051 |
| v. ) | |
| ) | Judge John W. Darrah |
| GREAT-WEST LIFE & ANNUITY ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff, Richard Incandela, brought this action for breach of contract against Defendant, Great-West Life & Annuity Insurance Co. ("Great-West"), after Great-West terminated Plaintiff's universal life insurance policy for Plaintiff's failure to pay past-due premiums.[1] Great-West and Plaintiff each filed motions for summary judgment, both of which are presently before the Court. For the reasons stated below, Great-West's Motion for Summary Judgment is granted in its entirety, and Plaintiff's Motion for Summary Judgment is denied in its entirety.

## **BACKGROUND**

The following facts are taken from the parties' statements of undisputed material facts submitted with their motions for summary judgment. Local Rule 56.1(a)(3) requires

---

[1] Richard Incandela is the insured. His wife, Sharon Incandela, is the policy owner. In its Motion for Summary Judgment, Great-West briefly argues that Mr. Incandela does not have standing to bring this action. Mr. Incandela summarily denies that assertion. Because Great-West's motion is granted on other grounds, it is not necessary to address the merits of Great-West's standing argument. To avoid confusion, reference to "Plaintiff" includes both Mr. and Mrs. Incandela, even though Mrs. Incandela is not a party to this litigation.

the party moving for summary judgment to provide "a statement of material facts as to which the moving party contends there is no genuine issue." Rule 56.1(b)(3) then requires the non-moving party to admit or deny each factual statement proffered by the moving party and to concisely designate any additional material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to dispute the facts set forth in its opponent's statement in the manner dictated by Local Rule 56.1 results in those facts being deemed admitted for purposes of summary judgment. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Both parties submitted Rule 56.1(a) statements of material fact along with their motions for summary judgment. Great-West properly responded to Plaintiff's Rule 56.1(a) statement but chose not to file any additional statement of facts pursuant to Rule 56.1(b). Plaintiff did not file a response to Great-West's Rule 56.1(a) statement. As a result, each of Great-West's statements of fact is deemed admitted for purposes of summary judgment.[2]

On June 1, 1988, Great-West issued a $1.75 million, flexible-premium, universal life insurance policy on the life of Richard Incandela (the "Policy"). (Def. 56.1(a)

---

[2] Both parties also make various factual assertions throughout their briefs that are not supported in any statement of undisputed material facts as required by the Local Rules. Those assertions are not considered in ruling on the present motions for summary judgment. The Seventh Circuit has "emphasized the importance of local rules and ha[s] consistently and repeatedly upheld a district court's discretion to require strict compliance with the local rules." *Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (citation and internal quotation marks omitted) (holding that district court did not abuse discretion in refusing to consider facts asserted outside of the parties' Rule 56.1(a) statements).

¶¶ 1, 2, 4; Pl. 56.1(a) ¶ 5.) Mr. Incandela's wife, Sharon Incandela, was the owner of the Policy. (Def. 56.1(a) ¶ 5.) The Policy stated that all rights in connection with the Policy while the insured is alive belong to the Policy owner. (Def. 56.1(a) ¶ 6.)

According to the Policy, the monthly premium was due at the beginning of each month. (Def. 56.1(a) ¶ 7.) The Policy was funded by a "policy value account," into which the owner could deposit advance funds from which monthly premium deductions would be taken. (Def. 56.1(a) ¶ 8.) If funds in the policy value account were insufficient to fund the premium due in a given month, the Policy would go into past-due status. (Def. 56.1(a) ¶ 9.) Under the terms of the Policy, notice would then be sent to the Policy owner. (Def. 56.1(a) ¶ 9.) If the owner did not pay the past-due amount within the Policy's 60-day grace period, the Policy provided for termination at the end of the grace period. (Def. 56.1(a) ¶ 10; Pl. 56.1(a) ¶ 6.)

Administration services in connection with the Policy were provided by Transactions Applications Group ("TAG"). (Def. 56.1(a) ¶ 11.) Using a computerized, electronic, policy-administration system, TAG "swept" Plaintiff's policy value account on March 1, 2007, and the system determined that the funds were insufficient to pay that month's premium. (Def. 56.1(a) ¶ 12.) TAG's policy-administration system then generated a letter dated March 2, 2007, informing Plaintiff that the premium had lapsed, that the grace period had begun, and that the Policy would be terminated at the conclusion of the grace period if the specified past-due amount was not paid within that period. (Def. 56.1(a) ¶ 13.) Plaintiff contends he did not receive the letter; Defendant insists it was sent. (Pl. 56.1(a) ¶ 8; Def. Resp. to Pl. 56.1(a) ¶ 8.) The computer-

generated, March 2 letter was not signed by any of Great-West's agents or employees, and Great-West is unable to identify the individual who physically mailed the March 2 letter. (Pl. 56.1(a) ¶¶ 16, 19.)

However, Great-West has provided evidence that the March 2 notice letter was generated and mailed. Specifically, Great-West produced a copy of the letter and computer records from TAG's computerized electronic administration system, showing that the letter was generated on March 2, 2007, printed on March 3, 2007, and mailed on March 5, 2007. (Def. 56.1(a) ¶¶ 13-14, 16-19.) Great-West also produced testimony of Courtney Lynn, the TAG employee who managed the policy-administration services in connection with the Policy. Lynn testified that those computer records would not exist if the letters had not been generated and that all system letters that are generated are subsequently mailed. (Def. 56.1(a) ¶¶ 15-19.)

The March 2 letter was addressed to Plaintiff at "1201 Midwest Club Parkway, *Hinsdale*, Illinois 60523." (Pl. 56.1(a) ¶ 14 (emphasis added).) Plaintiff's actual address is, "1201 Midwest Club Parkway, *Oak Brook*, Illinois 60523." (Pl. 56.1(a) ¶ 15 (emphasis added).) But Great-West asserts that the Hinsdale address to which the letter was sent is an effective address. (Def. Resp. to Pl. 56.1(a) ¶ 15.) Great-West asks the Court to take judicial notice of information shown on the U.S. Postal Service website indicating that Hinsdale is an "acceptable" city name for the 60523 zip code (*see* Resp. to Pl. Mot. for Summ. J. at 3) and that the correct zip code for 1201 Midwest Club Parkway is 60523, regardless of whether the city is identified as Hinsdale or Oak Brook (*see* Surreply to Pl. Mot. for Summ. J. at 3).

4

TAG's computer records show that a notice-of-termination letter was generated on April 30, 2007. (Def. 56.1(a) ¶ 17.) The April 30 letter was addressed to the same address as the March 2 letter, including the Hinsdale designation. (Def. 56.1(a) ¶ 20.) Plaintiff admits receiving a letter from Great-West on or about April 30, 2007, which states, "Since sufficient premium has not been received, this policy has lapsed." (Pl. 56.1(a) ¶ 8.)

The Policy contains a reinstatement provision whereby an owner/insured may apply for reinstatement of the Policy within three years of its termination by submitting a written request, evidence of insurability, payment of four months' cost of insurance plus twenty dollars, and payment or reinstatement of any outstanding policy loans. (Pl. 56.1(a) ¶ 6.) Reinstatement is dependent on Great-West's approval of insurability. (Def. 56.1(a) ¶ 21.) On or about May 25, 2007, the Incandelas submitted an application for reinstatement, along with a check for $22,022.21; they made no indication that they were challenging the propriety of the Policy termination. (Pl. 56.1(a) ¶ 12; Def. 56.1(a) ¶ 22.) On July 11, 2007, Great-West denied the application for reinstatement.[3] (Pl. 56.1(a) ¶ 13.) Over the entire life of the Policy, Plaintiff paid $307,351.07 in premiums. (Pl. 56.1(a) ¶ 7.)

---

[3] The letter notifying Plaintiff of the denial of reinstatement indicates the decision was made due to changes in Plaintiff's medical history. (Ex. 2 to Def. 56.1(a) at GW0035.) This issue was not addressed in the parties' briefs because Plaintiff affirmatively represented that the reason for denial is no longer at issue. On July 29, 2009, Magistrate Judge Denlow denied a motion to compel brought by Great-West. (*See* Docket No. 49.) Judge Denlow based his decision on Plaintiff's representation that he was not seeking reinstatement based on Plaintiff's medical condition but only on allegations of lack of notice. (*See id.*)

5

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying the evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). If the moving party meets this burden, the nonmoving party cannot rest on conclusory pleadings but "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986)). A mere scintilla of evidence is not sufficient to oppose a motion for summary judgment, nor is a metaphysical doubt as to the material facts. *Robin v. Espo Eng. Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (citations omitted). Rather, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*)).

In considering a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2005) (citing *Anderson*, 477 U.S. at 255). The court does not make credibility determinations or weigh conflicting evidence. *Id.*

## ANALYSIS

This case primarily concerns a dispute over whether Great-West properly notified Plaintiff that the Policy was in past-due status. Great-West says it sent the notice; Plaintiff says he never received it. Great-West's failure to provide that notice would constitute a breach of contract.

The undisputed facts show that a computer-generated notice of past-due status was created on March 2, 2007, and printed on March 3, 2007. The undisputed facts also show that on March 5, 2007, the letter was mailed to Plaintiff at 1201 Midwest Club Parkway, Hinsdale, Illinois 60523.

With regard to the notice, Plaintiff's arguments are basically as follows: (1) Great-West has not met its burden of showing that the March 2 letter was actually created, addressed, and mailed; (2) the copy of the letter produced by Great-West was incorrectly addressed; and (3) at any rate, Plaintiff never received the letter.

None of Plaintiff's arguments are persuasive. First, Great-West has demonstrated that it created, addressed, and mailed a notice of past-due status dated March 2, 2007. Great-West produced a copy of the March 2 notice and computer records confirming generation and printing of the notice. It also produced declaration testimony regarding the customs and practices followed by the office responsible for the creation, mailing, and tracking of notices to policy holders. That declaration testimony stated that all printed notices are subsequently mailed. Contrary to Plaintiff's assertions, the fact that Great-West cannot identify any particular individual who authored or mailed the March 2 letter does not diminish the inference that it was sent. The Seventh Circuit recognized

7

that companies handling a large volume of mailings would never be able to identify a specific individual who physically placed a notice letter in the hands of the U.S. Postal Service and that evidence of customs and practices can satisfy the burden of proving mailing:

> [I]n today's technologically advanced world such mailings: (1) are routinely performed by computers; and (2) frequently contain a large volume of notices mailed at a single time. If we were to require testimony from a company's mailing clerk, insurance companies would basically be forced to abandon the use of computers in mass mailings. This would inevitably increase costs which, as we all know, would be passed on to the consumer in the form of higher premiums.

*Hotaling, M.D. v. Chubb Sovereign Life Ins. Co.*, 241 F.3d 572, 581 (7th Cir. 2001) (*Hotaling*).

Thus, Great-West has provided ample evidence demonstrating that a notice of past-due status was generated and mailed to Plaintiff in accordance with Great-West's customs and practices; and Plaintiff has not demonstrated a genuine issue of material fact that would support a contrary inference. Moreover, Plaintiff's failure to respond to Great-West's Rule 56.1(a) Statement makes resolution of this issue even simpler: Great-West asserted that the March 2 letter was physically mailed to Plaintiff on March 5, 2007, and that the letter informed Plaintiff of the premium insufficiency, explained that the grace period had commenced to run, and explained that the policy would terminate at the conclusion of that grace period if the past-due amount was not paid. (Def. 56.1(a) ¶ 13.) Because Plaintiff did not dispute this statement of fact, it is deemed admitted on this basis.

Second, the March 2 letter was not improperly addressed. The letter was addressed to Plaintiff at 1201 Midwest Club Parkway, Hinsdale, Illinois 60523. Plaintiff argues the notice is ineffective because Plaintiff actually lives at 1201 Midwest Club Parkway, **Oak Brook**, Illinois 60523.

As set out above, Great-West asks the Court to take judicial notice of the fact that the United States Post Office identifies Hinsdale as an "acceptable" city name to use for the 60523 zip code. Judicial notice of a fact is proper if the fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). If a party requests that the court take judicial notice of a fact and supplies the court with the necessary information, the taking of judicial notice is mandatory. Fed. R. Evid. 201(d). The Seventh Circuit has taken judicial notice of information presented on reliable websites. *See, e.g., Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information on FDIC website). Here, the Court finds the accuracy of the U.S. Postal Service website is unquestionable and takes judicial notice of the fact that Hinsdale is an acceptable city name to use for the 60523 zip code. *See* USPS – Zip Code Lookup – Find All Cities in a Zip Code, http://zip4.usps.com/zip4/citytown_zip.jsp (enter "60523" in the "Zip Code" field; then select "Submit") (last visited Dec. 16, 2009). Accordingly, the Court finds that the March 2 letter was properly addressed. Furthermore, Plaintiff admits that he did receive the April 30 letter – which had the identical address as the March 2 letter. *See Zubi v. Acceptance Indemnity Ins. Co.*, 751 N.E. 2d 69, 79 (Ill. App. Ct. 2001) (finding that evidence that policy holder had received past correspondence despite wrong

zip code on address label was indicative of a subsequent notice being properly sent despite same error in zip code).[4]

Plaintiff's third argument, that he did not receive the March 2 letter, also fails. In addressing the issue of notice sent to a policy holder, a court in this district found that notice was properly provided as a matter of law notwithstanding the plaintiff's argument that the policy owner never received it. *See Spinelli v. Monumental Life Ins. Co.*, 476 F. Supp. 2d 898, 909 (N.D. Ill. 2007) (*Spinelli*). The *Spinelli* court relied on an affidavit and correspondence log submitted by the defendant, both of which showed that grace and lapse notices were sent to the insured at his last-known address, reasoning as follows:

> While an insurer is required to provide notice to a policy holder that a premium is overdue before rescinding that policy, it is only required to prove that a legally sufficient notice was addressed and mailed, not that it was received by the policy holder. An insurer may prove that notice was addressed and mailed either by an affidavit from a member of the company responsible for mailing such notices or by presenting records that confirm the particular notice was sent consistent with the company's customary practices.

*Id.* (citing *Hotaling*, 241 F.3d at 579-81) (citation and internal quotation marks omitted).[5]

---

[4] In his Reply in support of his Motion for Summary Judgment, Plaintiff argued that Great-West also addressed the March 2 letter to the wrong zip code. Because Plaintiff made this assertion for the first time in a reply brief, the Court granted Great-West leave to file a surreply. In its surreply, Great-West notes that Plaintiff has consistently listed 60523 (not 60521, which Plaintiff now claims to be correct) as Plaintiff's correct zip code in various documents filed and served in this case. At any rate, allowing Plaintiff to assert that an incorrect zip code was used would not change the outcome, because the Court also takes judicial notice that 60523 (not 60521) is the proper zip code for Plaintiff's Oak Brook address. *See* USPS – Zip Code Lookup – Search by Address, http://zip4.usps.com/zip4/welcome.jsp (enter "1201 Midwest Club Parkway" in the "Address 1" field, "Oak Brook" in the "City" field, and "IL" in the "State" field; then select "Submit") (last visited Dec. 16, 2009).

Because Great-West has demonstrated no genuine issue of material fact exists as to Great-West's proper notice of Plaintiff's past-due status, Great-West's Motion for Summary Judgment is granted as to Plaintiff's breach-of-contract claim, and Plaintiff's Motion for Summary Judgment is denied.

One issue remains. Although Plaintiff's Amended Complaint only states a single claim – for breach of contract – Plaintiff's prayer for relief seeks a declaration that Great-West erroneously, and in bad faith, denied Plaintiff's request for reinstatement and a finding that Plaintiff is entitled to relief under section 155 of the Illinois Insurance Code. (Am. Compl. ¶¶ c, d, g.) Great-West contends that a bad-faith claim remains "buried" in paragraph 14 of Plaintiff's Amended Complaint, which states, "Great-West breached its contact [sic] with Incandela and thus acted in bad faith and with reckless disregard for Incandela's rights by failing to provide written notice that sufficient premium had not been received and by failing to reinstate the policy when it had no reasonable basis for denying the claim or knew or should have known that there was no basis for denial of the claim." (Am. Compl. ¶ 14.)

As discussed above, Plaintiff has waived any argument regarding Great-West's failure to reinstate based on Plaintiff's medical history. *See supra* note 3. The only

---

[5] The question in *Hotaling* was whether notice was proper under section 234 of the Illinois Insurance Code, which specifically provides that notice is proper if it is properly "addressed and mailed." *See Hotaling*, 241 F.3d at 574 (citing 215 Ill. Comp. Stat. 5/234(1)). But that statutory provision does not apply to policies such as the one at issue in this case, that require premiums to be paid in monthly intervals. *See* 215 Ill. Comp. Stat. 5/234(2). But like the instant case, *Spinelli* addressed a lapse caused by a failure to pay a monthly premium. *See Spinelli*, 476 F. Supp. 2d at 903. Relying on *Hotaling* – but not on the statute – the *Spinelli* court still found that notice was sufficient where it was proved to have been properly addressed and mailed. *Id.* at 909-10.

11

possible basis on which Plaintiff might be asserting a bad-faith claim is the issue of proper notice. As discussed above, Plaintiff has failed to demonstrate a genuine issue of material fact regarding Great-West's proper notice of Plaintiff's account's past-due status. Accordingly, Great-West's Motion for Summary Judgment is also granted as to any claims of bad faith asserted in Plaintiff's Amended Complaint.

## CONCLUSION

For the reasons stated above, Great-West's Motion for Summary Judgment is granted in its entirety, and Plaintiff's Motion for Summary Judgment is denied in its entirety. Plaintiff's breach-of-contract claim (along with any other claims that might be inferred from the allegations in the sole count set forth in Plaintiff's Amended Complaint) is hereby dismissed.

Date: 2-4-10

JOHN W. DARRAH
United States District Court Judge